## The Alamo.[1]

### Russell and others *v.* The Alamo.

*(Circuit Court, S. D. Florida.   April 28, 1886.)*

SALVAGE—ALLOWANCE.
    Compensation allowed for salvage services rendered to a vessel aground on the Florida reef.

Admiralty Appeal.
*Bethel & Patterson*, for libelants.
*Treadwell Cleveland* and *W. C. Maloney*, for claimants.

PARDEE, J.   This cause came on to be heard on the transcript and evidence, and was argued, whereupon the court finds the following as the facts of the case:

(1) The facts as propounded in the amended libel, and in the several intervening libels, are practically admitted by the claimants' answer, and said allegations of fact are therefore taken to be true, and to the extent to which they go they are the facts in the case.

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar

In addition thereto the court further finds:

(2) The Alamo is of 2,256 tons register, 350 feet long, 40 feet beam, and at the time of the disaster in question she was well manned and equipped, and provided with the outfit of a first-class steamer, including steam-capstans and anchors, chains, hawsers, derrick, etc. When she grounded she was steaming along at a speed between 10 and 11 knots an hour, and she run hard on the reef, so that she was aground for over one-third of her entire length. She was so hard aground that she was not pounding, and although she was across the ridge of the reef, bow and stern afloat, outside of swinging a point or two, she was not moved until she was finally pulled off.

(3) The chain furnished by the libelants, and which parted, was 45 instead of 75 fathoms long, and was inadequate and insufficient, as the result proved; but the libelants furnished and used it in good faith, without knowledge or suspicion of any flaw therein.

(4) The libelants did not carry out the ship's anchor and chain, nor run an anchor on the port bow, and to windward, until the master of the Alamo repeatedly urged the same, supported by the opinion of Capt. Wilde, United States navy, both of which, in the light of after events, were wise and proper efforts and precautions; but the libelants acted in good faith, and with their best judgment, and the appearance of things then was that the ship could only be got off by lightering and jettisoning cargo until the ship could be pulled directly astern off from the reef, and this appearance was justified by the final result.

(5) The final relief to the ship was hastened by the assistance of the steamers Dix, Laurel, and Blake; and the credit of floating the ship should be divided between the libelants and those steamers.

(6) The charges of bad faith, want of zeal, and intentional misrepresentation, made by the claimant against the libelants, are not sustained by the evidence.

(7) The services rendered by the libelants involved no unusual risk of property, peril of life or limb, nor expense, courage, gallantry, nor heroism, but they were, considering the time and place, and the business of libelants, beneficial and successful services to the Alamo in distress, and are entitled to be compensated as salvage services, and above a mere reward for work and labor.

(8) The district court found the services of the libelants on behalf of the Alamo and cargo to be salvage services, and entitled to a compensation of $18,000, being 4½ per cent. upon a conjectured value, and being a sum not quite 3½ per cent. on the admitted value, of ship and cargo, and this sum is reasonable and proper salvage, under the facts of the case.

(9) The services of the intervening petitioners, Lowe, Russell, Roberts, Sawyer, and Griffin, with their boats and crews, in saving 664 bales cotton jettisoned, are admitted to have been salvage services, and the court finds that they were worth one-third of the value, or $12.50 per bale, amounting to the sum of $8,300.

(10) That a portion of the salved cargo which was perishable has been sold under order of the district court, and the proceeds thereof, less costs, to-wit, $1,105.43, are now in the registry of the court.

## CONCLUSIONS OF LAW.

(1) That the libelants should have judgment against the Alamo and cargo for the sum of $18,000, and costs of suit.

(2) That the intervening petitioners should have judgment against the cargo of the Alamo for the sum of $8,300, and costs of suit.

(3) That the sum of $1,105.43, now in the registry of the court, being the

proceeds of perishable cargo sold, less costs and charges, should be applied to the payment of judgments rendered against the Alamo and cargo.

JUDGMENT.

The foregoing facts and conclusions of law being considered, it is ordered, adjudged, and decreed that the libelants, as named in the amended libel, do have and recover of the steam-ship Alamo, her tackle, apparel, and furniture, and her cargo, for salvage services rendered, the sum of $18,000, and all costs of suit; the said sum of $18,000 to be distributed among the several libelants according to the rules of court and the customs in this district governing such cases.

And it is further ordered, adjudged, and decreed that the intervening petitioners hereinafter named do have and recover for the salvage of the number of bales of cotton specifically stated the sum of $8,300, as follows, to-wit:

| Petitioner Gideon Low, | - | - | - | - | 83 bales, | $1,037 50 |
| " Wm. J. Russell, | - | - | - | 59 " | 737 50 |
| " J. H. A. Roberts, | - | - | - | 47 " | 587 50 |
| " Wm. A. Sawyer, | - | - | - | 7 " | 87 50 |
| " Richard Griffin et al., | - | - | 468 " | 5,850 00 |

—The said sums to be distributed among the several intervening petitioners, their ships, and officers and crew, according to the rules of court and the customs of this district governing such cases.

And it is further ordered, adjudged, and decreed that, upon the payment of the sums herein awarded, together with the judgments in favor of Sweeting and Roberts not appealed from, and all costs and charges, less the sum of $1,105.43 now in the registry of the court, the said steam-ship Alamo and her cargo shall be released to the claimant for the benefit of the owners thereof, and all bonds or stipulations (if any there be herein) be canceled.

In explanation of the findings and judgment, I deem it proper to assign a few reasons. The case has been argued as though all the facts were in dispute, when in reality all the averments of the amended libel are admitted, except that the chain which parted was only 45 instead of 75 fathoms long. Besides admitting the matters alleged in the amended libel, the answer of claimant makes several averments touching the conduct and services of the libelants, and tending to depreciate the value of such services, even to denying all right to salvage, and these averments are practically the only issues of fact in the case. And I understand that the claimant, on the general facts of the case, in his answer, admits that the services rendered by libelants were salvage services.

The first complaint of the claimant is, in answer to the fourth article of the libel, that the ship's anchor could have been carried out, but salvors made no suggestion to carry it out, but represented that they had an anchor and chain exactly suitable, which representation misled respondent, and was the cause of ultimate serious loss and damage; and that the anchor did not weigh 2,700 pounds, and only 45 fathoms of chain were attached, and all the work of getting the hawser aboard, when brought to the ship's stern by the salvors, was performed by the ship's company, including the reeving of tackles, falls, etc.; and that the ship's steam-capstan was used to heave on the said hawser. The next complaint is in answer to the sixth arti-

cle, and is that the representations in regard to the 2,700-pound anchor and chain were not true; that the anchor did not weigh so much, and the chain was only 45 fathoms long, and was old and worn, and parted at the most critical moment, when said ship was moving off the reef, thus throwing the ship back upon and further on the shoal, and into less water, and causing all the additional labor and expense in order to finally extricate the ship, as well as causing great loss of time and delay, and might have been the cause of total loss of ship, and a great portion of cargo. Then, in answer to the seventh article, complaint is made that the ship's anchor was not carried out until claimant threatened to get the United States steamer Laurel to carry it out, and that in the labor of lightering and jettisoning cargo and coal the ship's company and machinery assisted. The ninth article is admitted, but claimant alleges that it took him two days to get an anchor run out on the ship's port bow. In answering the tenth article it is submitted that the libelants exaggerated their services, and tried to conceal the fact that the ship was moving, and had moved at least 15 feet, when the chain parted on second day of service; and that they actually claim credit for floating the ship, when she was pulled afloat by the united efforts of the United States steamers Laurel, Blake, and Dix. And, further, that libelants did not labor with the spirit and zeal that should actuate salvors.

On this answer I take it that the matters for the court to pass on are (1) the conduct of the libelants with regard to the 2,700-pound anchor and chain; (2) the alleged neglect of the libelants to carry out the ship's anchor and chain; (3) the alleged neglect of the libelants to run an anchor on the port bow to hold the ship's head from going to windward; (4) alleged exaggeration and concealment on the part of libelants; (5) alleged indifference and want of zeal on the part of libelants; (6) whether the services rendered by libelants, as shown by the record and evidence, were salvage services; (7) compensation,—if any, how much.

1. From the evidence I cannot see that the weight of Capt. Buckley's anchor or the length of the chain should cut any figure in the case. The anchor held, and the chain was lengthened by a hawser sufficiently strong. The trouble was in the strength of the chain. From the evidence I am unable to find that any of the libelants knew or suspected that the chain was inadequate or had any flaw. Capt. Buckley, the owner, swears that he had used it once before to pull the Zephyr off Palaska shoal, Tortugas. I think it clear that it was used in this case in good faith. As to what was accomplished with it, and the results of its parting, and as to what might have resulted if it had not parted, my conclusions are all against the claimants' pretensions. Whatever may have been the impressions and exclamations and observations of those aboard the ship, the weight of evidence is against the proposition that the ship was moved astern. She may have swung a point or two. If the ship had been moving astern, it is against rea-

son that the chain should have broken, as the resistance ought to have lessened with such stern movement. The movement of the water from the backing of the propellers, the wishes and hopes of the observers, and the possible swinging of the ship, caused the deception as to the movement of the ship. The fact that the hawser attached to a 1,300-pound anchor on the starboard quarter did not slacken, but remained taut, (and nobody claims that any slack was taken in on this hawser,) shows, with tolerable clearness, that the ship was not moved astern at the time the Buckley chain parted. Of course, if the vessel was not moved astern, she did not when the chain parted sag down (?) into shoaler water; and from the evidence it is impossible to say that if the chain had not parted that the ship could have been or would have been floated at that high tide. The conclusion that I reach from the whole case is that no power less than that with which the ship run aground could or would have hauled the ship off, until she was materially lightered of cargo. The parting of the chain was an accident, and, if disastrous results flowed from it, (which I am not prepared to say,) it does not seem that the libelants should be held responsible.

2. At the time Buckley's anchor was carried out it is shown that it would have been very difficult, if not impossible, to have carried out the ship's anchor. The ship's chain might have been then taken. But as no one then foresaw that the Buckley chain would fail, it is easy to see why the ship's chain was not used. That the ship's anchor was not sooner carried out after the Buckley chain parted, and the sea moderated, so that the wrecking schooners could come along-side, seems to be owing to the fact that the libelants had settled on what appears, under the evidence, to have been the correct view of the case, to-wit, that the ship had to be materially lightered of cargo before she could be got off. According to the admitted facts in the case, (see seventh article of libel,) the ship's anchor was carried out on Tuesday, (the weather having moderated,) and when the tide rose, heavy strains were hove on it, the steamers Laurel and Blake tugging at the same time, but nothing came of it. It is difficult to see why the libelants should be blamed for not sooner carrying out this anchor when so little resulted when it was carried out. It was proper to make the effort, and, if it had succeeded, the libelants would have been in serious fault in not following Capt. Wilde's suggestion sooner. As it failed, their judgment seems to be vindicated.

3. The anchor off the port bow to windward was not needed as long as the ship was hard aground. It could only be useful as soon as the ship should get lively. It seems to have been got out in time.

4. I do not find that the libelants concealed the part that the United States steamers took, or the aid that they gave; and in their evidence, as well as in their libel, they appear to give candid state-

ments and full credit. They seem to have an opinion that they would have got the ship off without the steamers—and Capt. Bolger is unable to say that they would not—in time.

5. The alleged indifference and want of zeal charged against libelants appears to have originated in a confusion as to the parties in the first consort-ship.

6. The libelants are professional wreckers and salvors. The disaster to the Alamo was on a dangerous shoal, far from port, and from other assistance. The position was one beyond the remedy of the ship's crew and the ship's appliances, without outside help, and was liable at any time to become exceedingly perilous. The labor and efforts of the libelants were continuous and arduous, in good faith, and successful, and although they were not heroic nor gallant, nor perilous to any extent, under the circumstances of the time and place, and the occupation of the libelants, I think they were salvage services, and not mere work and labor. And I understand the answer to concede that the services were salvage services. The case of *The Hesper*, 18 Fed. Rep. 698, decided by me, was one where the alleged salvors were tug-boats, within easy reach of their own port, and they did nothing but what was in the line of their every-day business; and, by the way, their services were held to be salvage services.

As to the amount of compensation, I feel disposed to follow the district judge. I am clear that it ought not to be increased over his allowance, though libelants' proctors have urgently and ably presented the matter in the light of actual service rendered, value of the ship and cargo exposed, peril of the ship, the wants of commerce, and the previous allowances in salvage cases in this district. Libelants worked from Sunday morning, 3 o'clock, until Thursday afternoon, 5 o'clock, in endeavoring to get the ship off. They lightered the ship of 1,515 bales of cotton, 82 bales of hides, 198 bundles of green hides, 406 boxes of eggs, 121 sacks of grain, 35 barrels of oil, and 160 tons of coal. Of the cotton, 1,052 bales were thrown overboard, but saved,— 362 bales by libelants, and 690 by intervenors, and 463 bales were loaded on libelants' vessels, and all the cotton was carried to Key West, a distance of 60 miles. The hides, eggs, grain, and oil were not jettisoned, but were loaded on libelants' vessels, and carried to Key West. Two nights were spent in throwing over coal. The admitted value of the ship and cargo in the pleadings is $525,000. As shown by the evidence, the value of the ship after she got off—for she was not injured to any extent—was $400,000. Mr. Mallory, one of her owners, says the cargo was worth from $100,000 to $150,000, so that the value of the cargo saved was not much short of $100,000. Three and one-half per cent. on $500,000 would be $17,500, and I think about that sum—$18,000—is a fair allowance to libelants, and against owners, under all the circumstances of this case.

The district judge allowed 4½ per cent. on $400,000, making $18,-000, and I affirm his finding.

The allowance to the intervenors for salved jettisoned cargo was on the basis of 33⅓ per cent. on the value of property saved, and seems just and proper.